UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMBER G.,[1]

        **Plaintiff,**

v.                            **Civil Action 3:23-cv-41**
                                 **Judge Thomas R. Rose**
**COMMISSIONER OF SOCIAL**        **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Amber G. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security period of disability, disability insurance, and supplemental security income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply Memorandum (ECF No. 10), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

        **I.**        **BACKGROUND**

Plaintiff filed applications for Title II and Title XVI disability benefits on December 2, 2014, alleging disability beginning November 20, 2014. Her claims were denied in a decision by

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

administrative law judge ("ALJ") Mary Lohr, dated April 23, 2018. (R. 901–17.) Plaintiff filed new applications for Title II and Title XVI benefits for a new period on January 16 and 17, 2020, alleging in both applications that she became disabled on April 24, 2018 (*i.e.*, the day after the ALJ Lohr's decision). After Plaintiff's applications were denied at the initial and reconsideration levels, ALJ Laura Chess held a telephone hearing on August 30, 2021, and issued an unfavorable determination on December 21, 2021. That unfavorable determination became final on December 8, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts two contentions of error: (1) ALJ Chess improperly applied *Drummond* and AR 98-4(6) when evaluating Plaintiff's claim for a new period; and (2) ALJ Chess erred in evaluating the opinion of Plaintiff's treating nurse practitioner and substituted the ALJ's lay opinion for the medical judgment of medical professionals. (Pl.'s Statement of Errors 5–9, ECF No. 7.) The undersigned disagrees as to both contentions of error.

## II. THE ALJ'S DECISION

On October 12, 2021, ALJ Chess issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 505–18.) At the outset, ALJ Chess stated,

> When adjudicating the claimant's current Title II and Title XVI claims involving an unadjudicated period, I must adopt the prior decision's residual functional capacity, as well as its findings on past relevant work, date of birth, and education, unless there is new and material evidence or changed circumstances relating to such a finding, or there has been a change in the relevant law, regulations or rulings affecting the finding. AR 98-3(6), 98-4(6). Here, I do not adopt the prior ALJ decision, as the claimant has presented new and material evidence for the unadjudicated period. Nevertheless, this new and material evidence continues to support a finding of "not disabled," as explained in the decision below. Additionally, findings regarding the claimant's past relevant work are only partially adopted due to the passage of time and new and material evidence offered by the vocational expert as detailed below.

(R. 506.)

2

Next, at step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since April 24, 2018, Plaintiff's alleged disability onset date. (*Id.* at 508.) At step two, the ALJ found that Plaintiff had the severe impairments of cardiomyopathy with aortic dissection, status-post open-heart surgery; left leg ischemia; multifocal cerebral vascular accident; hypertension; obesity; degenerative disc disease; adjustment disorder; depression; and anxiety. (*Id.* at 508–09.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 509–11.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the following limitations: lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk two hours in an eight hour workday; sit for two hours at a time, up to a total of eight hours in an eight-hour workday, with normal breaks; occasionally use foot controls

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

> with the left lower extremity; occasionally climb ramps and stairs; occasionally balance as defined by the Selected Characteristics of Occupations (SCO); occasionally stoop; never kneel, crouch, crawl, and climb ladders, ropes, or scaffolds; occasional exposure to extreme heat, extreme cold, humidity, and vibration; no work at unprotected heights or with moving mechanical parts; no commercial driving; understand, remember, and carry out simple instructions; perform simple, routine tasks; few changes in a routine work setting.

(*Id.* at 511.) The ALJ then relied on the hearing testimony of a Vocational Expert ("VE") at steps four and five to conclude that Plaintiff was not capable of performing any of her past relevant work, but that there are other jobs existing in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform, such as document specialist, surveillance system monitor, and ticket counter. (*Id.* at 516–17.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 518.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of*

*Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.     ANALYSIS

As set forth above, Plaintiff asserts two contentions of error: (1) ALJ Chess improperly applied *Drummond* and AR 98-4(6) when evaluating Plaintiff's claim for a new period; and (2) ALJ Chess erred in evaluating the opinion of Plaintiff's treating nurse practitioner and substituted the ALJ's lay opinion for the medical judgment of medical professionals. (Pl.'s Statement of Errors 5–9, ECF No. 7.) The undersigned considers each contention of error in turn.

### A.     The ALJ gave Plaintiff's new and material evidence the "fresh look" required by *Earley*.

In *Drummond v. Commissioner of Social Security*, the United States Court of Appeals for the Sixth Circuit held that principles of *res judicata* apply to both claimants and the Commissioner in Social Security cases. 126 F.3d at 841–42. The *Drummond* court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. Following *Drummond*,

5

the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

The Sixth Circuit clarified its *Drummond* decision in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the ALJ found that *Drummond* required him to give preclusive effect to a prior RFC determination absent "new and material evidence documenting a significant change in the claimant's condition." *Id.* at 930 (record citation omitted). The Sixth Circuit disagreed with the ALJ's approach, noting that *Drummond* was a somewhat unusual case in which the claimant was seeking to hold the Commissioner to a prior finding that she was limited to "sedentary" work, as opposed to the finding by a second ALJ that she could engage in "medium" work. *Id*. at 934. Indeed, in *Drummond*, the claimant was entitled to the benefit of *res judicata* as to the Commissioner's previous finding because "[n]othing had changed between the end of the first application and the beginning of the second one—other than the advancement of one year in the applicant's age." *Id.* at 932 (citing *Drummond*, 126 F.3d at 842). Under those circumstances, in which the first and second ALJs reviewed essentially the same medical evidence,[4] the *Earley* court affirmed *Drummond*'s holding that the Commissioner was bound by the previous ALJ's finding that the plaintiff was limited to sedentary work. *Id.* at 932–33.

---

[4] The only additional evidence considered by the second ALJ was a report indicating that the plaintiff's "condition actually worsened" in the interim. *Drummond*, 126 F.3d at 843.

6

It is much more common, however, for claimants to receive an unfavorable decision and then file a second application for a subsequent period, this time desiring that the Commissioner reach a different result. *Earley* held that "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." *Id*. at 932. The Sixth Circuit explained that "the key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications"—do not prohibit the Social Security Administration "from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at 931. Thus, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id.* at 933 (citations omitted). Nonetheless, "[f]resh review is not blind review," and "[a] later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id*. at 934. Indeed, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* at 933.

Courts applying the "fresh look" test must do so with consideration for the underlying principle animating *Earley*: fairness to the applicant. *See Ferrell v. Berryhill*, No. 1:16-CV-00050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019) (explaining that "the point" of *Earley* is fairness to the applicant). Accordingly, "an applicant should have the opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing." *Id.* As a result, "if an ALJ is under the mistaken assumption that

7

she is bound by the earlier ALJ's decision, the applicant is faced with 'an unwarranted procedural burden . . . at the second hearing.'" *Maynard v. Comm'r of Soc. Sec.*, No. 2:18-CV-959, 2019 WL 3334327, at *6 (S.D. Ohio July 25, 2019), *report and recommendation adopted*, 2019 WL 3891859 (S.D. Ohio Aug. 16, 2019) (quoting *Ferrell*, 2019 WL 2077501, at *6).

In this case, Plaintiff submitted new evidence regarding her impairments during the three-year period subsequent to ALJ Lohr's 2018 decision. She submitted treatment notes from Colbert Family Health, where she was treated by Marquetta Colbert, CNP, from June 2017 through September 2021 (R. 1157–1282, 5231–5334, 5344–46); three opinions by Ms. Colbert, dated August 9, 2021, August 27, 2021, and September 21, 2021 (R. 5335–43, 5347–50); treatment records from Kettering Health Network for December 2017 through January 2021 (R. 1298–2258, 4158–5092, 5102–5230); treatment records from Premier Health for May 2017 through August 2020 (R. 2276–2966, 2968–4038); treatments records from Premier Cardiovascular Institute for January 2020 through August 2020 (R. 4039–4149); a December 11, 2020 consultative psychological examination report (R. 4150–57); and a January 4, 2021 consultative internal medicine examination (R. 5093–5101). These additional medical records satisfy the "new evidence" standard required for a "fresh look" under *Earley*. 893 F.3d at 931. The Court must therefore ask whether ALJ Chess, "despite purporting to follow *Drummond*, gave the evidence a fresh look" as required by *Earley*. *See Johnson v. Comm'r of Soc. Sec.*, No. 2:17-CV-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting cases). "If so, then the ALJ's decision satisfie[s] *Earley*; if not, then remand [i]s appropriate." *See id*.

Here, although ALJ Chess recited the *Drummond* and AR 98-4(6) standard, it is not apparent from the written decision that ALJ Chess felt in any way constrained by ALJ Lohr's prior decision. ALJ Chess immediately rejected ALJ Lohr's RFC, finding that Plaintiff had

8

"presented new and material evidence for the unadjudicated period," before even beginning her analysis of Plaintiff's impairments. (R. 506.) Moreover, ALJ Chess extensively discussed the medical evidence from the new, relevant period. ALJ Chess noted Plaintiff's cardiovascular symptoms, including stable chronic aortic dissection; Plaintiff's hypertensive complications and Plaintiff's being "horribly noncompliant" with her blood pressure treatment recommendations; normal ejection fractions; and an emergency cesarean section due to a hypertensive emergency. (R. 512–13.) ALJ Chess further noted conflicting evidence regarding Plaintiff's need to use a cane or walker, noting Plaintiff's occasional reports of using a case, but also noting multiple records documenting Plaintiff's normal gait and a treating provider finding no standing or walking restrictions were necessary. (R. 513.) ALJ Chess also discussed evidence related to Plaintiff's intact strength and normal range of motion, Plaintiff's moderate neural foraminal stenosis, which had resolved to mild stenosis by 2019, and lack of treatment for chronic back issues. (R. 513–14.) As to her mental symptoms, ALJ Chess noted that Plaintiff was instructed to speak to her treating provider about changing depression medications in March 2020 when Plaintiff reported that Wellbutrin was no longer working well for her, but it does not appear such a conversation occurred; "[i]ndeed, the claimant admit[s that as of December 2020,] she has 'never participated in mental health treatment.'" (R. 514, citing R. 2379, 4153.)

ALJ Chess also discussed the opinions of the state agency physical and mental health reviewers, Plaintiff's treating nurse practitioner Marquetta Colbert, CNP, consultative examiner Jessica Twehues, Psy. D., consultative examiner Amita Oza, M.D., and Plaintiff's treating physician's assistant Saima Rashid, PA-C. (R. 514–16.) ALJ Chess rejected the state agency initial physical consultant's opinion and only partially adopted the reconsideration physical consultant's opinion, as Plaintiff's history of open-heart surgery and chronic aortic dissection

9

supported additional limitations. (R. 514–15.) ALJ Chess adopted the state agency mental health consultants' opinions, finding them supported by Plaintiff's generally unremarkable consultative exam, Plaintiff's ability to prepare meals, do chores, shop, and drive, and Plaintiff's lack of significant mental health treatment. (R. 515.) ALJ Chess found Ms. Colbert's opinion unpersuasive, as they were internally inconsistent and inconsistent with other evidence of record.[5] (R. 515.) ALJ Chess further found the Dr. Twehues's opined limitations unpersuasive, as Plaintiff's use of depression medication and inability to identify the direction in which the sun sets, or how food and gasoline are alike, supported greater limitations. (R. 515–16.) ALJ Chess rejected Dr. Oza's opinions that Plaintiff's "work-related activities appear to be affected" by Plaintiff's cardiological symptoms, arthritis, and COPD, as this opinion "fails to provide specific functional limitations necessary for a medical opinion." (R. 516, citing R. 5096–97.) Finally, ALJ Chess also rejected Ms. Rashid's opinion that Plaintiff cannot work a full-time job because it opines on an issue reserved to the Commissioner—whether Plaintiff can work. (R. 516.)

In arriving at the RFC, ALJ Chess referred to ALJ Lohr's decision only for its summary of Plaintiff's medical history for the period prior to the current applications. (*See* R. 512.) ALJ Chess did not otherwise refer to ALJ Lohr's decision or RFC. And ALJ Chess's RFC is significantly *more* restrictive than that of ALJ Lohr, who did not include any limitations on lifting, standing, walking, sitting, exposure to hazards, commercial driving, or understanding, remembering, or carrying out instructions, and limited Plaintiff only to occasional kneeling, crouching, crawling. (*Compare* R. 907 with 511.) Plaintiff does not identify any additional limitations that ALJ Chess should or would have included had she applied the proper *Earley* standard.

---

[5] The ALJ's consideration of Ms. Colbert's opinion is discussed in further detail below.

The undersigned concludes that ALJ Chess complied with the core principles set forth in *Earley*, as she gave "a fresh look" to Plaintiff's new application "while being mindful of past rulings and the record in the prior proceedings." *See* 893 F.3d at 931. ALJ Chess did not merely adopt ALJ Lohr's RFC without analysis; to the contrary, ALJ Chess carefully considered and discussed in detail the treatment notes and opinion evidence from the period subsequent to the prior decision. Moreover, ALJ Chess included additional restrictions that were not present in ALJ Lohr's RFC, demonstrating that ALJ Chess did not incorrectly believe herself to be bound by the prior RFC. The undersigned therefore finds no error in the ALJ's application of *Drummond*. As explained by the Eastern District of Michigan:

> [T]he Court is less concerned as to whether the ALJ merely stated the wrong legal standard, and more concerned as to whether the ALJ applied the wrong legal standard. While a post-*Earley* ALJ's recitation of the pre-*Earley* standard raises a yellow flag, it is nevertheless possible that such a post-*Earley* ALJ decision could functionally comply with *Earley* if the ALJ gave the evidence a fresh look.

*Mitchell v. Comm'r of Soc. Sec.*, No. CV 20-13414, 2022 WL 265869, at *2 n.3 (E.D. Mich. Jan. 28, 2022); *see also, e.g., Lambert v. Comm'r of Soc. Sec.*, No. 1:18-CV-116, 2019 WL 336903, at *5 (S.D. Ohio Jan. 28, 2019) ("Because ALJ Nguyen gave a 'fresh look' to the new evidence, a remand under *Earley* is not warranted, and the undersigned must conduct a substantial evidence review of ALJ Nguyen's decision."); *Washington v. Comm'r of Soc. Sec.*, No. 1:17-CV-773, 2019 WL 1367736, at *5 (S.D. Ohio Mar. 26, 2019) (declining remand where the ALJ reviewing the second application "did not merely rely upon the earlier denial," but "undertook an evaluation of the objective medical evidence presented and claimant's allegations of limitation"); *Christina S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-298, 2023 WL 4557045, at *6 (S.D. Ohio July 17, 2023) ("In this case, the fairest read of the ALJ's opinion is that he reviewed the evidence independently—without any thumb on the scale—and crafted a record-based RFC. That is all that is required, even if the ALJ cited *Drummond* without *Earley*.").

The undersigned recognizes that this District is not unanimous in its treatment of *Drummond* and *Earley*, and that other cases have reversed the Commissioner's decision on similar facts. *See*, *e.g.*, *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio March 8, 2023). However, these cases are not binding authority, and the undersigned is not persuaded by their reasoning that no fresh review is possible when an ALJ recites the pre-*Earley* standard. In this case, ALJ Chess functionally complied with *Earley*, despite her recitation of the pre-*Earley* standard; that is all that is required.

**B.     The ALJ did not err in considering the opinions of Marquetta Colbert, CNP, or Saima Rashid, PA-C.**

Plaintiff contends that ALJ Chess "reversibly erred in articulating the persuasiveness of the supportability factor" when considering the opinions of Marquetta Colbert, Plaintiff's treating nurse practitioner. (Pl.'s Statement of Errors 8, ECF No. 7.) The undersigned disagrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[6] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an

---

[6] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements."  §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).  Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered.  §§ 404.1520c(b)(2); 416.920c(b)(2).  And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so.  *Id*.  If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Ms. Colbert provided three opinions: an August 9, 2021 Disability Certificate, an August 27, 2021 Medical Assessment of Ability to Do Work-Related Activities (Physical), and a September 21, 2021 Mental Impairment Questionnaire. (R. 5335–42, 4343, 5347–50.) The ALJ provided the following discussion of Ms. Colbert's opinions, finding them unpersuasive:

> Marquetta Colbert, CNP, opines that the claimant cannot sustain work activity, can lift 10 pounds frequently but only five pounds occasionally, cannot perform any postural activities, must elevate her legs occasionally, would be absent more than three times per month, would be distracted 2/3 of the workday, but can perform sedentary work. Ex. B18F. This is unpersuasive. As an initial matter, Ms. Colbert fails to support her own opinion, given its internal contradictions. She finds the claimant can perform sedentary work while also requiring multiple monthly absences, occasional leg elevation, and inability to sustain work activity, none of which would permit sedentary work on a regular and continuing basis. Additionally, Ms. Colbert's statements are inconsistent with the claimant's normal ejection fraction (Ex. B11F/21; B14F/62), as well as her normal gait and muscle strength. (e.g. B17F/13, 18, 25, 58; B20F/3).
>
> Ms. Colbert also opines that the claimant has marked to extreme mental limitations. Ex. B21F. This is unpersuasive, as it is inconsistent with the claimant's lack of any

> notable mental health treatment in the available medical evidence. Indeed, Ms. Colbert's treatment records, which lack any significant discussion of mental health (*see* ex.'s B17F, B20F) apart from one visit in May 2021 (Ex. B17F/65-67), do not support such an extreme opinion. The claimant's relatively benign consultative mental status exam (Ex. B13F/4-5) is further inconsistent with this opinion. Therefore, this opinion is not persuasive.
>
> Ms. Colbert further opines that the claimant is disabled and unable to work. Ex. B19F. This is inherently neither valuable nor persuasive, as it opines on an issue reserved to the Commissioner—whether the claimant can work. 20 CFR 404.1520b(c)(3), 416.920b(c)(3).

(R. 515.) The only deficiency Plaintiff raises with this discussion is ALJ Chess's characterization of Ms. Colbert's physical Medical Assessment as reflecting "internal contradictions" arising from Ms. Colbert's finding that "the claimant can perform sedentary work while also requiring multiple absences, occasional leg elevation, and [an] inability to sustain work activity, none of which would permit sedentary work on a regular and continuing basis." (Pl.'s Statement of Errors 8, ECF No. 7, quoting ALJ Decision, R. 515.) Plaintiff asserts that "whether an employer would tolerate those limitations is a question for the vocational expert, not the treating CNP" and that "Colbert simply opined that [Plaintiff] could perform sedentary work, but with limitations." (*Id.*)

The undersigned agrees that Ms. Colbert's opinions are internally inconsistent. The physical Medical Assessment includes opinions that Plaintiff both (1) cannot "[c]omplete a normal workday and work week without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods," and (2) has "the residual functional ability on a sustained basis (in an eight hour workday) to do sedentary work; that is, lift 10 lbs. maximal/or carry such articles as small tools. Such work involves primarily sitting but the individual can sit/stand and walking/standing is required only occasionally." (R. 5337, 5341.) Thus, Ms. Colbert opined that Plaintiff both can and cannot complete a normal eight-hour workday. The Commissioner further points out that

14

Ms. Colbert's opinion in the physical Medical Assessment that Plaintiff could perform sedentary work with limitations is inconsistent with Ms. Colbert's Disability Certificate from two weeks prior, which opined that Plaintiff was "totally incapacitated" and "permanently disabled and unable to work." (Mem. in Opp'n 13, ECF No. 9, citing R. 5343.) Plaintiff did not address this additional inconsistency, or any arguments regarding Ms. Colbert's opinions, on reply.

Nor are Ms. Colbert's opined limitations supported by evidence in the record. Even when prompted for an explanation supporting her opinions, Ms. Colbert left most of these sections of the Medical Assessment blank. (*See* R. 5337–39, 5341.) *See Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, *13 (N.D. Ohio June 4, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms that contain little to no accompanying explanation for the assessed limitations—even when utilized by a treating physician or acceptable medical source—are unsupported opinions . . . ." (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on those grounds."); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) ("[C]hecklist forms . . . which require only that the completing physician check a box or fill in a blank, rather than provide a substantive basis for the conclusions stated, are considered weak evidence at best in the context of a disability analysis.") (internal quotation marks and citation omitted). Nor are Ms. Colbert's opined limitations supported by her treatment notes, which reflect largely unremarkable findings. (*See* R. 1180–81, 1188–89, 1193–94, 1210, 1218–19, 1235–36, 1238–39, 5296, 5299, 5310–11, 5346.) The undersigned therefore finds no error in ALJ Chess's discounting of Ms. Colbert's opinions.

15

As to the opinion of Ms. Rashid, she opined on February 27, 2020 that "[f]rom my perspective, currently [Plaintiff] does not appear[ ] to be stable enough to work a full-time job." (R. 1264, 2386.) ALJ Chess provided the following discussion of Ms. Rashid's opinion:

> Saima Rashid, PA-C, opines that the claimant cannot work a full-time job. Ex. B9F/111; B1F/108. This is inherently neither valuable nor persuasive, as it opines on an issue reserved to the Commissioner—whether the claimant can work. 20 CFR 404.1520b(c)(3), 416.920b(c)(3).

(R. 516.) The undersigned finds no error in ALJ Chess's evaluation of Ms. Rashid's opinion. ALJ Chess is correct that whether Plaintiff can work is an issue reserved to the Commissioner, and therefore any medical source's opinion on that issue is not entitled to any particular weight. *See* 20 C.F.R. §§ 414.1520b(c)(3), 416.920b(c)(3) (providing that "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act" because they are "[s]tatements on issues reserved to the Commissioner").

Finally, Plaintiff asserts that in rejecting most of the medical opinions in the record, ALJ Chess "essentially substituted her lay judgment for that of the actual medical professionals." (Pl.'s Statement of Errors 7, ECF No. 7.) This argument is unavailing. As noted above, the ALJ, not medical sources, has the final responsibility for deciding issues like residual functional capacity. 20 C.F.R. §§ 414.1520b(c)(3), 416.920b(c)(3). The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their supportability, with reference to objective medical evidence and supporting explanations, and their consistency with other medical and non-medical source evidence. 20 C.F.R. §§ 414.1520c(c)(1)–(2), 416.920c(c)(1)–(2). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the

16

evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Further, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (upholding Commissioner's decision where plaintiff "contend[ed] that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion," finding "the premise" of that position "is wrong").

Contrary to Plaintiff's assertions, ALJ Chess did not impermissibly use her own opinion instead of the medical opinions in the record. Rather, ALJ Chess properly considered and weighed the opinions and evidence in the record when crafting the RFC. Accordingly, the undersigned finds ALJ Chess's consideration of the medical opinions is supported by substantial evidence.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations

to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

>  */s/ Chelsey M. Vascura*
> CHELSEY M. VASCURA
> UNITED STATES MAGISTRATE JUDGE